UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS M. WELLS, *as trustee of the David Bolger Revocable Trust*, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION H-14-1548 |
| JM EAGLE, *et al.*, | § § | |
| *Defendants*. | § § | |

MEMORANDUM OPINION AND ORDER

Pending before the court is defendant J-M Manufacturing Company, Inc. and JM Eagle's (collectively "JM Eagle") motion for summary judgment. Dkt. 56. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion for summary judgment should be DENIED.

Also pending before the court is JM Eagle's motion to strike plaintiff Thomas M. Wells, as trustee of the David Bolger Revocable Trust's ("Bolger"), summary judgment evidence. Dkt. 59. The court finds that the motion to strike should be DENIED, and that JM Eagle's objections should be OVERRULED.

I. BACKGROUND

This is a landlord-tenant dispute in which the property owner, Bolger, asserts a breach of contract claim against the tenant, JM Eagle. Dkt. 1. Bolger is the owner of an 18 acre tract of industrial land in Conroe, Texas housing two main buildings, an office building, railroad tracks, and other small structures (the "Premises"). Dkt. 57 at 8. Since 1984, Bolger has leased the Premises to PVC pipe manufacturers. *Id.* Through a series of leases, sub-leases, lease amendments, and

corporate reorganizations, JM Eagle became the tenant of the Premises in 2007.  *Id.* at 5-7.  JM Eagle's lease terminated in November, 2012.  *Id.* at 7.

Bolger alleges that although the lease ended on November 30, 2012, and JM Eagle stopped paying rent on that date, JM Eagle maintained possession of the Premises to make necessary repairs. Dkt. 1 at 5.  Bolger claims that it is entitled to double rent for the entire holdover period.  *Id.*  Bolger also claims that JM Eagle failed to repair and maintain the Premises as required by the lease and that Bolger is entitled to damages.  *Id.* at 6.  Bolger finally claims that JM Eagle's lack of maintenance led Union Pacific to remove railroad switching equipment that had previously been located on the Premises and allowed other rail equipment to fall into disrepair.  *Id.* at 10.  JM Eagle now moves for summary judgment, arguing that Bolger has no evidence to support any of its claims.

## II. Legal Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, it is not entitled to a summary judgment, and no defense to the motion is required. *Id* . "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

*A.     Summary Judgment Evidence*

Evidence supporting or opposing summary judgment may be submitted in affidavit form, so long as the affidavit is "made on personal knowledge . . . set[s] forth such facts as would be admissible in evidence, and . . . show[s] affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Evidence that would not be admissible at trial is not competent evidence to be considered during summary judgment. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991). "Unsubstantiated assertions are not competent summary judgment evidence," however a single affidavit can be sufficient to substantiate a party's allegations. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177 (1990) (the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues"); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). The court should only disregard those portions of the affidavit that would be inadmissible. *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992). "The papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party," and a failure to meet technical requirements

does not preclude their consideration in opposition to a motion for summary judgment. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987).

JM Eagle has made numerous objections to Bolger's summary judgment evidence. The court makes the following rulings on JM Eagle's objections:

- Declaration of John Eckstrum: Objection overruled because the record shows Mr. Eckstrum is not being offered as an expert witness. Any statement by Bolger to the contrary was an inadvertent error which has been corrected by communication between the parties.

- Photographs attached to Eckstrum Declaration: Objection overruled because Eckstrum declares that he took the pictures on August 27, 1984.

- Paragraphs 9, 10, and 11 of the Eckstrum Declaration: Objection overruled because this is not expert testimony, and the observations made are within Eckstrum's personal knowledge.

- Paragraph 10, lines 6-10 of the Eckstrum Declaration: Objection overruled because the evidence can be presented in an admissible form at trial.

- Paragraphs 4, 5, 6, and 7 of the Fichera Declaration: Objection overruled because the statements in the declaration do not necessarily contradict Fichera's deposition testimony, and this is not a "sham" declaration. Additionally, the record indicates that Fichera has personal knowledge of the matters covered in the declaration, and the declaration does not present expert testimony.

- Paragraphs 8, 9, 10, and 11 of the Alfaro Declaration: Objection overruled because personal knowledge is not required for Alfaro to authenticate documents from the Secretary of State.

- Sullivan Declaration: Objection overruled because the evidence presented is relevant to Bolger's claims and defenses.

- Bolger Declaration: Objection overruled because the evidence is relevant and within Bolger's personal knowledge.

- Sheybany Declaration: Objection overruled because the evidence is relevant to Bolger's claims and defenses.

- Hoffman Declaration: Objection overruled because the evidence is relevant to Bolger's claims and defenses.

- Flynn Declaration: Objection overruled because the evidence is relevant to Bolger's claims and defenses

- Mackey Deposition: Objection overruled because the evidence can be presented in an admissible form at trial.

- Black Deposition: Objection overruled because the evidence can be presented in an admissible form at trial.

In sum, JM Eagle's motion to strike Bolger's summary judgment evidence is DENIED.

B.   *Failure to Maintain the Premises*

The parties agree that the lease required JM Eagle to return the Premises "in such repair and condition as the Demised Premises were in upon Sublessee's possession . . . except that Sublessee shall comply with obligations set forth in Paragraph 4 and shall not be responsible for ordinary wear and tear." Dkt. 57 at 10.  Bolger claims that JM Eagle violated this lease provision by returning the Premises in a state of disrepair.  Specifically, Bolger claims that "[t]he buildings had hundreds of holes throughout the exterior walls, the roof was corroded, the insulation was tearing off from its connection, walls were damaged, and the structural integrity of the buildings was compromised." Dkt. 57 at 11.

In its motion for summary judgment, JM Eagle argues that Bolger cannot prove this claim because Bolger cannot establish the property's condition prior to JM Eagle's occupancy and accordingly cannot demonstrate that the Premises were discernibly different from when JM Eagle took possession and that any alleged damage was not normal wear and tear.  In support of this argument, JM Eagle cites deposition testimony of Mr. JT Bolger, who controls the day-to-day operations of the Bolger family business and who was designated by Bolger as the person most

6

knowledgeable about Bolger's visits and inspections of the Premises.  Dkt. 56 at 11.  JM Eagle argues that it moved in during 2007 and that Mr. JT Bolger indicated that he did not visit the Premises until between 2008 and 2010.  *Id.*  JM Eagle also points to the deposition testimony of Alfio Finchera, a general contractor used by Bolger.  Fichera testified that he first visited the Premises in 1990 and again in 1995.  After that, he did not visit the Premises until 2012 or 2013. *Id.*  Accordingly, JM Eagle argues that neither Mr. Bolger not Fichera can establish the condition of the Premises when JM Eagle took possession.

In response, Bolger presents evidence sufficient to defeat summary judgment.  First, Bolger presents evidence that JM Eagle is the legal successor to prior tenants and is responsible for the condition of the Premises since 1984.  Dkt. 57 at 14.  Bolger offers evidence of several corporate mergers and name changes beginning with Extrusion Technologies, Inc. in 1984 and ending with JM Eagle.  *Id.* at 8.  The documents forming PW Eagle, which later merged with J-M Manufacturing to form JM Eagle, state that PW Eagle was formed in accordance with the Minnesota Business Corporations Act, which provides that surviving entities are "responsible and liable for all of the liabilities and obligations of each of the constituent organizations."  Min. Stat. § 302A.641(e) (2014).

Bolger also presents evidence that the condition of the Premises deteriorated substantially since 1984.  Bolger offers testimony from John Eckstrum, a real estate broker who visited the Premises several times between 1984 and 2012.  Dkt. 57 at 18.  Eckstrum testifies that in 1984, there were no holes in the buildings and no rust or corrosion.  *Id.*  Eckstrum testifies that when he returned to the Premises in 2012, there was corrosion and holes throughout the interior and exterior sheet metal of the building.  *Id.* at 19.  Bolger's motion presents additional evidence in support of this

claim, but the above-cited evidence is sufficient to defeat JM Eagle's motion regarding Bolger's inability to establish the condition of the Premises prior to JM Eagle's tenancy.

C.     *Failure to Maintain Railroad Equipment*

In 2006, Union Pacific Railroad removed railroad switching equipment located at the Premises.  Dkt. 57 at 24-25.  Bolger claims that the railroad equipment was removed due to lack of maintenance and that JM Eagle breached the lease by failing to "maintain the . . . railroad spurs . . . in good, clean and sanitary order, condition and repair."  Dkt. 56 at 24.  JM Eagle moves for summary judgment on this claim arguing that the railroad equipment was removed for lack of use, not lack of maintenance, and that the lease did not require JM Eagle to use the railroad equipment. Dkt. 57 at 25.  In opposition to the motion, Bolger presents evidence that the switch was removed in part because of its poor condition and that Union Pacific would have been willing to leave the equipment in place, regardless of non-use, if the landowner paid a maintenance fee.  Dkt. 56 at 24. According to Bolger, JM Eagle was aware of Union Pacific's intent to remove the switching equipment and failed to inform Bolger.  *Id.*  Bolger argues that this is a violation of the lease, which requires maintenance of the railroad equipment.  *Id.*  The evidence presented regarding the removal of railroad switching equipment, when considered in the light most favorable to Bolger, is sufficient to defeat summary judgment.

D.     *Holdover Tenancy*

After JM Eagle's lease expired and it vacated the Premises, Bolger provided a list of repairs it believed JM Eagle was responsible for.  JM Eagle disputed its obligation to make the repairs, but voluntarily returned to make some of the repairs.  Dkt. 56 at 15.  Bolger argues that it is entitled to holdover rent for the period of time, after termination of the lease, that JM Eagle was making repairs.

JM Eagle argues that it was not a holdover tenant pursuant to the lease because it surrendered the property upon termination of the lease.  *Id.* at 16.

The applicable holdover provision states: "[i]n the event of holding over by the Sublessee after expiration or termination of the Term or Option Term without the written consent of Sublessor Sublessee shall pay as liquidated damages double the rent each month for the entire hold over period."  Dkt. 56-2 at 39-40.  Under Texas law, a holdover tenant is a "tenant who continues to occupy leased premises after expiration or termination of its lease."  *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915 (Tex. 2013).  Bolger does not dispute that JM Eagle vacated the premises at the end of the lease.  Rather, Bolger argues JM Eagle was a constructive holdover tenant because it failed to leave the Premises in the condition required by the lease and had to return to make repairs.  In support of its argument, Bolger cites *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884 (Tex. App.—Texarkana 2009).  The court in *Cammack* held that "[b]ecause the Cammacks failed to remove their improvements and restore the premises, they were subject to the holdover provision under the lease."  *Id.* at 893.

JM Eagle argues that *Cammack* is inapplicable because "[i]n *Cammack*, the tenant was liable for the condition of the property because that lease's holdover provision specifically required the removal of trade fixtures, repair of any damage to the premises, and the like," and that there is no such requirement in the holdover provision here.  Dkt. 58 at 6.  However, the leases are actually much more similar than JM Eagle acknowledges.  In *Cammack*, the holdover provision was in the same paragraph as the requirement of surrendering the property in good condition.  *Cammack*, 296 S.W.3d at 892.  Not surprisingly, the paragraph was entitled "Surrender of Premises and Holding Over."  *Id.*  In the lease at issue here, there is one paragraph titled "Surrender" that requires the lessee

9

to "surrender the property . . . in good order and condition," and a second paragraph titled "Holding Over" that outlines the penalties for holdover tenants.  Dkt. 56-2 at 8, 39-40.  That the provisions are contained in two paragraphs instead of one, does not change their operation in any meaningful way.  Accordingly, the court finds that the lease at issue here is similar to the lease in *Cammack*. Since Bolger has presented evidence that JM Eagle had to return to make repairs after the termination of the lease, it can survive JM Eagle's motion for summary judgment on Bolger's claim that JM Eagle was a holdover tenant.

## IV. CONCLUSION

Because Bolger has presented evidence sufficient to create a question of fact on each of its claims, JM Eagle is not entitled to summary judgment, and its motion for summary judgment (Dkt. 56) is DENIED.

Signed at Houston, Texas on April 6, 2015.

_____
Gray H. Miller
United States District Judge

10